Good morning. May it please the Court, my name is Erwin Chemerinsky and I represent the appellant, Paul Hoffman. Because I'm going to be splitting time with Terry Collingsworth, I thought it might be helpful to give a roadmap of how we'll be proceeding. I'm going to argue that the District Court abused its discretion by applying the wrong legal standard. These were court-initiated sanctions under Rule 11C1B. Under the law of this circuit, it's clear that court-initiated sanctions require a finding akin to contempt. That is bad faith. There is no finding of bad faith here. In fact, Mr. Hoffman's conduct was reasonable under the circumstances. Mr. Collingsworth is then going to take a couple of minutes and he's going to address the matters concerning the sanctions against him. And the hope is that he'll still leave us some time for rebuttal. Your Honor, on September 10th, 2007, the District Court issued an order to show cause. That's found in Excerpt of Records, page 262. At the beginning of that order, the District Court said it was considering sanctions under Rule 11C1B. 11C1B refers to court-initiated sanctions, as you know. This circuit has been clear that court-initiated sanctions require a finding akin to contempt. That is bad faith. This Court has explained that because court-initiated sanctions don't have the safe harbor that would be under 11C1A, there has to be a more stringent standard. And this Court has been explicit about that. Sotomayor, Mr. Chemerinsky, could we back up? Excuse me. Could we make sure that all cell phones are turned off? Please. Excuse me. I would like to just back up for a moment. Yes. The conduct that gave rise to the sanctions was what? Would you describe it, please? I want to understand how the standards would apply differently. Yes, Your Honor. What was here is a complaint was filed on behalf of people in the Amazon Rainforest of Ecuador alleging that they had incurred cancer as a result of the conduct of the defendants. For three of those plaintiffs, it turned out they had not had cancer. What had happened was the District Court dismissed the complaint of these three individuals. It reserved the question of sanctions. At what point did the fact that they didn't have cancer and that the whole thing was false come out? During the depositions. Okay. The District Court dismissed the claims, reserved the question of sanctions. The defense then moved for sanctions. The sanctions were opposed by the plaintiffs. And then the District Court on its own transferred what was the motion for sanctions to a court-imposed request for sanctions. Now, that actually violates this Court's decision in Radcliffe. But taking what the Court said in its order to show cause on its own terms, that these were court-initiated sanctions, as I said, this Court has been clear that court-initiated sanctions require finding akin to contempt. And here, Your Honor, I point to the point. Excuse me. Counsel, isn't this case different from either Barber or Radcliffe?  Well, Your Honor, in the sense it is exactly the same as Radcliffe, because in Radcliffe what the Court said is there should not be a transfer from a party-initiated sanction to a court-initiated sanction. Otherwise, the safe harbor of Rule 11 would have no meaning. However, taking this as different for the reason you say, taking it entirely as court-initiated sanctions, this Court has been clear that court-initiated sanctions require bad faith. Well, no. Let me make sure I understand this. The defense, the party-initiated request for sanctions were to be imposed on the parties? Well, the defense asked for sanctions imposed on plaintiff's counsel. Mr. Bonacast, Mr. Collinsworth, and Mr. Hoffman. And that wasn't a Rule 11, Rule 11 sanction request. It was the inherent power of the Court. Well, the motion that was the defendant's motion for sanctions is to excerpt the record 458 and 459. And it, of course, was a Rule 11 motion at that time. If you look, though, at excerpt of record 262, which I think is the most important page on the record, that's where you find the district court's order to show cause. And at the very beginning of that, the very first line, the Court invokes 11C1B, which is court-initiated sanctions. So as I said to Judge Nelson, even if you accept that this is different than Radcliffe and even if you assume this is just court-initiated sanctions, this Court has been clear that court-initiated sanctions require finding akin to bad faith. Okay. Now, in this case, the how that standard would require, you are the contempt standard, the bad faith standard, you equate them? Yes. I mean, in fact, this Court in Barber v. Miller specifically cites to the advisory committee notes and to a Second Circuit case that say that the standard is bad faith. This Court in the United Nationals said, and I'm quoting here from 242F3 at 1115-16, in light of this important distinction, sui sponte sanctions will ordinarily be imposed only in situations that are akin to contempt of court. It's always been said that contempt of court requires bad faith. And, Your Honors, here there was no finding of bad faith. Now, the bad faith would have to be found against, if I understand your position, against the lawyers. That's correct. It would have to be found against them individually. And that would require what in the circumstances of this, a finding that they knew that the complaint was false? Exactly. Well, I think that it would have to be shown as to each of these lawyers, as to my client, Mr. Hoffman, it would have to be shown that he filed knowing that it was false. And there's no such finding of bad faith. In fact, I believe that Mr. Hoffman's conduct with the circumstances of this case was reasonable. He relied on experienced code counsel who he had dealt with for a long period of time. He did make extensive inquiries before he signed the complaint. And, of course, his conduct in this case was signing the complaint. That's what his involvement was. And he was also local counsel, correct? He was local counsel. That's correct, Your Honor. And he signed the complaint. The only other thing he was involved in was one matter with regard to discovery when Mr. Collingsworth was on vacation. And in light of his relying on counsel he had worked with for a long time, experienced counsel, in light of the fact that this case, dealing with plaintiffs in the Ecuadorian rainforest, it was reasonable. The only thing that I want to say is, if you read carefully the defendant's briefs on the standard to be applied, all of their cases that argue against a bad faith standard were either before the amendment to Rule 11 in 1993 or before this court handed down its decision in Barber and United National Insurance, or they're cases that generally deal with the standard under Rule 11, but none of their cases deny that this circuit is consistently held, that court-initiated sanctions under 11C1B require bad faith. I think what I'll do is leave it to Mr. Collingsworth and the rest for rebuttal. May I just ask one question? Of course. Counsel, let's assume that the district court did apply the wrong legal standard. That case shouldn't be remanded for factual findings in the first instance. Why should we reverse? At the very least, Your Honor, I think it does have to be reversed and remanded for a finding of whether there was bad faith. On the other hand, Your Honor, I think you can look at the facts of this record and see that the facts can't possibly support bad faith because counsel's action was reasonable. Thank you. With respect to your client. That's correct, and that's all I'm speaking of, Your Honor. Thank you. Good morning, Your Honors. I'm Terry Collingsworth, and I, first of all, would join the arguments made on behalf of Mr. Hoffman, and we would like to preserve as much time as we can for rebuttals, so unless there's a specific question directed to me, I just have a few brief points to make that, as was indicated, we had a team and we relied upon each other for our specific roles. Mine was to appear in the court in San Francisco and handle the procedural motions that precluded the summary judgment motion. Well, who's the bad guy here? Well, Cristobal Bonifaz accepted responsibility before the district court. He paid the sanctions, and his role in the case was to develop the facts, and he's an Ecuadorian-American, and he's the person who was in charge of that aspect, and he accepted responsibility, Your Honor. So that it's very important in this kind of work that this is all that I do, and a large part of what Mr. Hoffman does is to work together with others to bring these kinds of human rights cases. And if we couldn't rely upon other counsel who were a part of our team, we couldn't possibly do this kind of work. Just one question. Mr. Collinsworth's position, as far as the counsel were concerned, he was co-counsel in the case, correct? I'm Mr. Collinsworth. Yes. You were co-counsel in the case. But I was distinctly, and all the declarations from Mr. Bonifaz and I indicate clearly that the division of labor was clear. It's very much like the Schwartz v. Millionaire case, which we cite in our brief from the Eleventh Circuit, that we had someone who was responsible for this. But if it's a bad faith standard, Your Honors, I was as surprised as anyone could imagine the day that these depositions occurred and the clients indicated that they had falsified their claims to us. And we were dreadfully surprised and took immediate action to correct that mistake. One additional question. Since the sanctions have now been paid, as I understand it, Mr. Bonifaz paid the sanctions, he is not appealing. That's right. What is the standing for you and Mr. Hoffman to appeal? Well, we have standing to appeal that our names were sanctioned. I suppose in the briefs we've directed our attention to whether we could also appeal that award against Mr. Bonifaz, but he didn't. So we're here to clear our names. We were found responsible for something that was unfortunate, but that we ourselves were not directly responsible. If you ever want to be a judge and you're asked whether or not you've been sanctioned or something like that, you'd have to respond? Well, it's even worse, Your Honor. The defense bar is citing this as an example of our credibility, and it's hurt us a lot. So that's why we're here. Thank you. And the judge did require that you send a copy of the order that was issued to the State Bar. Yes, we did. Thank you. We'll save our time for rebuttal. Thank you. Thank you. Good morning, Your Honors. Craig Stewart appearing for the defendants. Rule 11 requires that before a complaint is filed, an inquiry reasonable under the circumstances must be conducted. The district court here held that that standard was not met. And our position is that that was not an abuse of discretion, clearly not an abuse of discretion. Is counsel raising a jurisdictional issue here? It's briefly discussed in the briefs, but what's your position on jurisdiction? The jurisdictional question was raised by the court in advance of the briefing. We briefed it then. We briefed it again in our brief here for the reasons we explained in our brief. We feel that Mr. Collinsworth's appeal was not timely and it's not saved by the subsequent events doctrine on which he relies because we believe that's foreclosed by first tier. And that is you're still taking that position? Yes, Your Honor. But on the merits, I think it's important to emphasize what we heard and what we didn't hear this morning. There's no question that these allegations were false. Counsel says that he was surprised when he later learned, but there would not have been a surprise. They wouldn't have been duped as they claim they were duped by the plaintiffs had they done the inquiry that was required. Well, what stake do you still have in this once the sanctions have been paid and the there's a finding against the originating attorney that was in bad faith? I think it's the stake, Your Honor, that any litigant would have to make to move for sanctions. We were forced to defend these claims that we ---- But haven't you been compensated for that? No. I mean, is there any more money out there that is owing on these sanctions? The sanctions have been paid, Your Honor. Yeah. But I don't ---- I'm not aware of any authority that says that a defendant in a case where sanctions have been awarded lacks standing to defend on behalf of the district court, on behalf of the judicial system. No, I understand that. My question was what stake do you ---- does your client have in this? I think it's no different, Your Honor, than any other case in which the defendant has been the subject of false claims and wishes to have the falsity of those vindicated by a sanctions order, as Rule 11 provides. Okay. Counsel, may I just ask a question? It seemed to me all the cases you cited in your brief were either decided before the 1993 amendments to Rule 11, which added the safe harbor requirement, or involved party-initiated sanctions. Why aren't we bound to follow Barber and United National Insurance? The first point on that, Your Honor, is I would like to correct what counsel has said this morning about what United National and Barber hold about a bad case. Those cases do not, under any reading of the opinion, adopt a standard that requires bad faith in a court-initiated sanction. What they do is they refer to the advisory committee notes language to the 1993 amendments saying that there is no safe harbor provided in a court-initiated sanction context ordinarily district courts will not award sanctions absent conduct that is akin to contempt. Now, what counsel is doing is trying to equate that to a higher substantive standard, a bad faith standard, in the context of court-initiated sanctions. But it's important to evaluate that. So why would we not look at that advisory committee notes or opinion in trying to determine what the proper standard should be? Well, there's two reasons, Your Honor. One is, of course, the text of Rule 11 itself governs. And if the court looks at the text, Section 11b describes the substantive standard that governs. And it requires that counsel conduct an inquiry reasonable under the circumstances to determine that the allegations have evidentiary support. That is the substantive standard that Rule 11 enacts. Subparagraph c describes the procedures by which counsel or a party may be sanctioned for violation of the substantive standard in subparagraph b. And there's nothing in subparagraph b that requires any showing other than a failure to abide by that reasonableness standard. Well, if these what is the standard of reasonableness for counsel that are asked to local counsel and are told to appear as local counsel and are told that the referring lawyer has done all the inquiry, this is all good, do they have to do an independent inquiry? Do we keep increasing the fees that the clients have to pay because each lawyer down the line has to do its own inquiry, interview the clients, and determine to his own satisfaction that there's merit to the complaint? Your Honor, in the UniOil case, this Court indicated that each counsel, including someone who purports to be a local counsel, has that duty to satisfy the requirements of Rule 11. And I think that there it's hard to lay the groundwork. You have to satisfy the duty. The question is, is what is the reasonable inquiry? And I think that is precisely what Judge Alsop here addressed in his order. He went through what the reasons why he concluded that these counsel had not discharged their duty, whether it was Mr. Hoffman, who claims to have only been local counsel, whether it was Mr. Collingsworth, who claims he relied on Mr. Bonifaz. The Court carefully went through the circumstances of each of these counsel and concluded that they hadn't done enough. And I think the applicable standard here is abuse of discretion. And I'd like to explain why I believe that there was no abuse of discretion in concluding that under the facts of this case, these counsel didn't satisfy their duty. Now, let's begin with Mr. Hoffman. He says, well, I know Mr. Collingsworth. I've relied on him. I trusted him.  Well, that is the great issue in most cancer cases. Right. But as the facts here indicate, we didn't even get to first base because these plaintiffs didn't even have a cancer diagnosis. He never asked that question. Assuming there's a bad – just assume that there's a bad faith standard here. That really wouldn't meet it, would it, to say I was more concerned about causation, which is the – which is one of the big – which is the big hot issue in Nass-Torten. Yeah. Assuming that, which, of course, we vigorously dispute, I think that at a minimum a remand would be required, as I think the question was, to allow Judge Alsup to consider that. And I think the facts here are sufficiently egregious. When you look at the very minimal inquiry that was made here, the facts are – and the subsequent circumstances that Judge Alsup cited in his order regarding the discovery responses and the like that indicate sort of a continuing effort to obfuscate and hide the truth, even after the medical records were indisputably in their possession, showing that there was no cancer. And in this case, Mr. Hoffman signed the original complaint and also the amended complaint. Well, I believe Mr. Collingsworth signed the amended complaints. There were two of them. Mr. Collingsworth signed those. Mr. Hoffman signed the first one. But I – the point I'd like to really emphasize, Your Honor, is that we are not saying that Mr. Hoffman or even Mr. Collingsworth had to personally go down and interview these litigants, that they had to, in essence, prove their case before they even filed it. What we are saying, however, is that what they did was clearly inadequate. They sent a paralegal down to Ecuador who gathered intake forms. The intake forms on themselves, as Judge Alsup found, raised serious questions. The allegation was that Mrs. Chamba's son had leukemia. The intake form says nothing about leukemia, refers only to suspected cancer, and has no information about any diagnosis. He did not have a diagnosis. Was there a requirement that there be some type of medical opinion that was supposed to be attached to something to support that basis? I think under the facts here, Judge Alsup did not have used his discretion in concluding that, yes, there – counsel was obligated to do more than simply send a paralegal down and be told orally by a layperson that that person had cancer. The cancer – cancer is not something that can be self-diagnosed. You have to have a doctor to diagnose that. And it turned out they didn't. And a very simple question, a very simple effort, what – when was the diagnosis given, who was the doctor, and then an effort to go get that. As they did, these diagnoses were available. They just didn't make the effort to get them before they filed suit. And I think under any standard, whether you – whether it's a reasonable inquiry under the circumstances, whether it's something higher, something that, you know, would permit a court to find that. Now, Judge Alsup found it under the standard that he believed was applicable. If the standard were bad faith, then he should be entitled to an opportunity to evaluate the facts as a district court judge against that standard. I would like to come back to Judge Nelson's question about the bad faith standard. As I indicated, the rule itself says nothing about any higher standard when it's a court-initiated sanction. The advisory committee itself, note, does not purport to impose any different standard. It simply observes, as a descriptive matter, that sanctions ordinarily will not be imposed by district court judges because of their natural institutional inclination not to engage in satellite litigation over sanctions unless they believe that it was serious enough to merit sanctions. So the advisory committee note, even if you were going to look at it as somehow, you know, certainly couldn't modify the language, but if the court were to look at it, at most it simply recognizes that district court judges – that no safe harbor is necessary because district court judges are naturally inclined not to impose sanctions. And the facts here, the procedures that were followed here, indicate that all of that institutional constraints on awarding sanctions were fully applicable. Judge Alsup held a lengthy hearing on this. He issued an order to show cause, gave them opportunity to brief it, held a lengthy hearing, asked counsel for the defendants to march through all of the evidence. Then he gave the plaintiffs' counsel an opportunity to supplement with additional declarations, which they did, and then he issued a lengthy order, carefully analyzing all of this evidence and concluded that this – that the investigation, the inquiry made by these counsel was simply not reasonable under the circumstances. Let me also briefly address the point that under Barber or Radcliffe, the court didn't have the power to exercise its own authority under 11C1B because of the motion that had already been filed by the defendants. First, I think as Judge Marshall pointed out, the motion that the defendants filed was not a motion under Rule 11. So even if there were a rule that says a prior party-initiated motion under Rule 11 eliminates the court's authority thereafter to issue sanctions on its own motion, even if that were the rule, there was no Rule 11 motion here filed by a party. But more importantly, in both Barber and in Radcliffe, what happened is the court didn't issue an order to show cause as required by the plain language of Rule 11. Instead, what the court did was, without following that required procedure, simply ruled on the defendant's motion and said, well, at Safe Harbor, we don't need to comply with that. That's not what happened here. The court expressly invoked, on at least two occasions, its own power under Rule 11 to act on its own motion. This let me conclude by, again, the counsel mentioned here that this was a team, and the court asked, well, who's the bad guy here? I think Judge Alsop properly found that each of these counsel was the bad guy in the sense of not living up to their duties under Rule 11. This was, frankly, not a close case in terms of the inquiry that was done, and it's astonishing, actually, when you read the declarations, the degree of finger-pointing that's done here. Mr. Hoffman says he relied on Mr. Collingsworth, who says he relied on Mr. Bonifaz, who says he relied on Mr. Pena, who says he relied on Ms. Teresa, the paralegal. But so you get down to the bottom of it, okay, what did Ms. Teresa do? She didn't do the requisite, even the minimum necessary, before you can file a claim like this, alleging the kinds of claims that were alleged here. And because her inquiry was inadequate, the inquiry of the others was not adequate. It was necessarily inadequate, particularly because they never even asked what she had done. They never got to the bottom of what inquiry had been done, and that was a failure to live up to the standards of Rule 11. For those reasons, we respectfully request that the judgment be affirmed. Thank you. Your Honor, two points by way of rebuttal. The first is that the standard for court-imposed sanctions is bad faith, and second, that there was no finding of bad faith here, and that Mr. Hoffman's conduct was reasonable. This Court in Holgate v. Baldwin has said there's abusive discretion if a district court erroneously applies the law. There's an issue here about what this Court has previously said. The solution is simply to look at the cases. If this Court looks at United National Insurance v. R&D Latex at 242 F. 3rd, 1115 and 16, this Court says, under Rule 11b-2, the standards applied with particular stringency was here the sanctions imposed on the courts on motion. In that circumstance, unlike that which the opposing party moves to Rule 11 sanctions, there is no safe harbor in the rule allowing lawyers to correct or withdraw their challenged filings. In light of this important distinction, sua sponte sanctions will ordinarily be imposed only in situations that are akin to contempt of court. What is the law? I have the case here, but what is the law in other circuits on this now? The Second Circuit, which this Court cites to, specifically said it's bad faith. In fact, if you look right where I was reading, this Court cites to Hodges v. Yonkers Racing, which holds it's bad faith, and there's a subsequent Second Circuit case holding that. There is a split among the circuits, Your Honor. There are other circuits that have gone the other way. In Barber v. Miller, if you look at 146 F. 3rd at 711, you find exactly the same language, including this Court citing to the advisory committee note to Rule 11 saying it's a standard akin to contempt. The reason the advisory committee note matters is this Court has adopted it as the standard. And it is clear that contempt requires bad faith. In fact, Your Honor, if you look back at United National Insurance, I'm sorry, Barber v. Miller, this Court cites to Inouye-Keegan and Chambers v. Nasco saying that when you're dealing with contempt of court or a standard like that, it has to be bad faith. Just out of curiosity, has there been any cert petitions or has there been any effort to get the Supreme Court to straighten this out? I don't know the answer to that. The Supreme Court has obviously not done so yet. Right. The second point that I would make, Your Honor, is that there's no finding of bad faith here and that Mr. Hoffman's conduct was reasonable. And here I think the attorney for the defendant simply mischaracterizes what went on. It wasn't all relying on just a paralegal, Ms. Teresa. There's local counselor, Mr. Payment. Also, Mr. Boniface was involved. And what Mr. Hoffman did was rely on the representations of two very experienced lawyers who he'd worked with for years, Mr. Boniface and Mr. Collingsworth. Indeed, Mr. Hoffman did make inquiries. That's undisputed in the record. Mr. Hoffman was very concerned about whether or not there was sufficient evidence in terms of causation for what Texaco had done in the cancer by these plaintiffs. Thousands of pages of material were provided. Now, the only thing that Mr. Hoffman didn't do was look at the medical records themselves. In fact, as to the three individuals, as to one of them, Gonzales, all the district court said was Mr. Hoffman didn't look at the medical records. This has to be looked at in context, Your Honors. You're dealing here with individuals in the Amazon rainforest in Ecuador. We're not talking about the medical records that might exist at a hospital in the United States. This court has always said sanctions can't be imposed just based on 2020 hindsight. In hindsight, it's easy to say the medical records weren't there, but the intake forms were looked at and everything was. I would conclude, Your Honor, by quoting this court's language in United National Insurance on page 1115, where this court says, Judges therefore should impose sanctions on lawyers for their mode of advocacy only in the most egregious situations. Must lawyers be deterred from vigorous representation of their clients? There isn't unreasonableness here, let alone bad faith. Thank you. Thank you. You've got ten seconds. I'm going to use ten seconds, Your Honor. I just would refer, Your Honors, to our opening brief, pages 13 to 17, where the Cato v. Fresno city case is discussed to show that there is jurisdiction over my case based on the relation back standard. Thank you, Your Honors. Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Nelson D. W., Marshall